## THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF MICHIGAN v. JOHNSON NILES.

Where a bank had power under its charter to take and hold lands for the convenient transaction of its business, and to secure debts, but for no other purpose, *it was held,* it had no right to purchase lands for the purpose of selling them again; and the Court refused to assist it in enforcing a contract made with that intent.

A purchase after the contract was made, in part performance of it, will not change the case.

THE bill in this case was filed to obtain the specific performance of a contract entered into by the parties on July 1st, 1839. The complainants bound themselves to convey to defendant, within sixty days thereafter, certain real estate described in the contract, and to obtain from one Jeremiah H. Pierson a good and sufficient deed of the Rochester mill property, and convey to him three undivided fourth parts of it; and, in case a mortgage should be given by them on the mill property, for the purchase money, they covenanted to pay the incumbrance, and cause it to be discharged within five years. The defendant, in return, agreed to execute a mortgage to complainants for the purchase money to be paid by him, amounting to $28,000, on the property to be conveyed, and on certain other property named in the contract. Within the sixty days,

complainants purchased and obtained a deed of the mill property from Pierson, for $5,000, which they paid and secured to be paid to him. They then made out and executed a deed to defendant for three-fourths of it, with the other property they were bound by the contract to convey to him, and were ready and willing to perform their part of the contract.

The defendant demurred.

*G. M. Williams* and *A. D. Fraser*, in support of the demurrer.

*J. F. Joy*, contra.

THE CHANCELLOR. The first objection made by defendant is, that the bank had no authority under its charter to make such a contract as that disclosed by the bill; and that this Court will not, for that reason, decree a performance of it.

The third section of the act of incorporation concludes with these words: "The President, Directors and Company of the Bank of Michigan shall be in law capable of purchasing, holding and conveying any estate, *real* or personal, for the *use* of the said corporation." By the ninth section it is provided, "That the lands, tenements and hereditaments, which it shall be lawful for the said corporation to hold, shall be only such as shall be required for its accommodation in relation to the convenient transacting of its business, or such as shall have been *bona fide* mortgaged to it by way of security, or conveyed to it in satisfaction of debts previously contracted in the course of its dealings, or purchased at sales upon judgments, which shall have been obtained for such debts."

The power given by the third section to purchase, hold and convey real estate, is limited by the ninth section to

specific objects.   Taking the two sections together, the intention of the legislature is clear, and but one construction can be given to them.   It was intended that the corporation should have power to purchase real estate for the convenient transaction of its business, or to secure a debt; but not for the purpose of investing its capital, or of speculating in lands, or of buying them merely to sell again. I have no doubt this is the true construction of the charter.   A different construction would enable the corporation to buy and sell real estate at pleasure, and render entirely nugatory the restriction imposed by the ninth section.   The corporation, then, exceeded its powers, and contracted to do what it had no right to do under its charter, when it covenanted to purchase the mill property of Pierson, and convey three-fourths of it to defendant.   It was an agreement to buy real estate of one individual to sell to another;—a contract to violate its charter, by embarking in a business with which it had no right to meddle;—a contract which, for that reason, this Court cannot, consistently with equitable principles, assist the complainants to carry into execution.   Equity will aid no one in doing that which is unlawful.

The purchase of the mill property of Pierson for $5,000, after the contract was made, makes no difference; for it was done under the contract, and in part performance of it.   The case of *The Banks* v. *Poitiaux*, 3 *Rand. R.* 136, goes no further than this, that the corporation having purchased the land, might make a deed of it; not that it might make a contract with A. to purchase the lands of B., and sell them to A., which is the case before me.

It is unnecessary to decide the other questions made on the argument.

Demurrer allowed.

NOTE. This case was affirmed on appeal.